76   603
s 84   398

## LACY v. MORTON.

### Opinion delivered October 28, 1905.

1. TRIAL—WRITTEN INSTRUCTION—DIRECTION OF VERDICT.—A direction to the jury to return a verdict is not an instruction, within the constitutional requirement that all instructions shall be in writing on the request of either party. (Page 605.)

2. LEASE—CONSTRUCTION.—Where an agreement of lease provided for the payment of a fixed rent, but stipulated that in the event of a partial overflow the lessees should, on the first day of June, notify the lessor whether they claimed damages to the crop, and that, if no agreement could be made between them as to the amount of reduction, then the lessees should receive one-third of the corn and other feed products and one-fourth of the cotton and cotton seed, it was immaterial whether the notice of intention to claim damages for a partial overflow was given on the first of June or prior thereto. (Page 606.)

3. SAME—REDUCTION OF RENT—FORFEITURE.—Where an agreement of lease stipulated that, in case the lessees claimed a reduction in the rent on account of a partial overflow, they should give notice to the lessor, who should have the use of the gin house and machinery for a year, the fact that the lessees continued to use the machinery after notifying the lessor of their claim for a reduction of rents on account of a partial overflow did not forfeit their right to such reduction. (Page 607.)

4. SAME—Where an agreement of lease stipulated that in case of a partial overflow the lessees might claim a partial reduction in rent, and, in case of disagreement as to the amount of reduction, that the lessor should receive one-third of the feed products, and it was proved that there was a disagreement as to the amount of the reduction claimed, the failure of the lessees to gather part of the grass crop, if a violation of the contract, did not operate as a forfeiture of the right to a reduction on account of the overflow. (Page 607.)

Appeal from Desha Circuit Court.

ANTONIO B. GRACE, Judge.

Reversed.

J. G. Morton was in 1902 the owner of a plantation in Desha County known as the "Creek Place" and his wife, Carrie Morton, owned a plantation in the same county known as "Mound Place." In that year they leased both of those places to J. E. Lacy, C. A. Lacy and A. Kimball, who signed the contract as Lacy Brothers & Kimball. The lease was for a term of three years. The lessees were to pay an annual rental of $2000, but the contract provided that if an overflow prevented the production of a crop no rent should be paid. The contract also contained the following stipulation:

"In the event of a partial overflow of said land, second parties shall notify first parties on the first day of June of such year if they claim damage to crop thereby. If no agreement can be made between the parties hereto as to the amount of reduction in rent for that year on account of said damage, then first parties shall receive as rent for such year one-third of all the corn, hay, and other feed products of the land, and one-fourth of the cotton and cotton seed, and shall have the use of the gin house and the machinery for that year."

These places were near the Mississippi River, and in March, 1903, were partially overflowed. On the 7th day of April, 1903, the lessee sent by registered mail a letter to J. G. Morton as follows:

"DEAR SIR:—Would like to meet you in Arkansas City sometime the latter part of this month, in order that we might adjust the rent matter, as you know the place has suffered from overflow. Hoping to hear from you at an early date."

Morton replied to this letter, but the nature of the reply is not shown.

In July there was another partial overflow. In October the lessees notified the lessors that they were holding one-third of the corn and one-fourth of the cotton subject to their order.

The lessors demanded payment of the rent in full, and afterwards brought this action on the contract to recover of the lessees $2,000 for rent of 1903.

The lessees filed an answer, setting up that there had been

a partial overflow, that they had notified the lessors thereof, but were unable to come to any agreement with them in reference to the rents, and were ready and willing to deliver them the portion of the crop as provided in the. contract when there had been a partial overflow and failure to agree on the rents.

On the trial the court directed the jury to return the following verdict, which was prepared by the court: "We, the jury, by direction of the court find for the plaintiff in the sum of $2,025. J. S. Warrenner, Foreman."

The defendants appealed.

*Taylor & Jones,* for appellants.

Notice of the damage given on a day previous to the time mentioned in the contract is a sufficient compliance with the contract. 31 Me. 290; 9 Cyc. p. 726 g. There being some evidence to sustain appellants' contention, it was error to direct a verdict against them. Const. art. 7, § 23. The court's refusal to reduce his instruction to writing was in violation of the Constitution. 72 Ark. 400.

*E. S. Pindall,* and *Campbell & Stevenson,* for appellees.

The courts, as also the parties, are bound by the undisputed conditions of the contract. 72 Ark. 490.

The preparation of the verdict for the jury was not a charge or instruction in the sense in which those terms are used in the Constitution. 121 Ind. 541; 73 Ind. 577, 579; 95 Ind. 170-5; 63 Pac. 969-70; 10 Okla. 424; 46 N. E. 540-43; 56 N. E. 51- 53.

RIDDICK, J., (after stating the facts.) This is an appeal from a judgment against defendants for rent of land.

After hearing the evidence, the court directed a verdict for the plaintiffs, and refused to put this direction to the jury in writing, further than to write out the verdict and tell one of the jurors to sign. Counsel for defendants contend that this direction to return a verdict was an instruction, and that the presiding judge erred in refusing to reduce it to writing. But this contention cannot be sustained. The object in having the presiding judge to reduce his instructions to writing, when requested by either party, is to avoid any controversy about the language or meaning of the court's charge to the jury when the case is submitted to the jury. But this provision of the law has no applica-

tion to a case when the judge is of the opinion that there is nothing to be submitted to the jury. and disposes of the case by directing them to return a verdict for one of the parties for a designated amount.　In such a case the form of the instruction or the particular words used by the judge are of no moment, for the act of the jury in returning the verdict is merely formal.　The direction to return a certain verdict is in fact a withdrawal of the case from the jury and a decision by the court.　The judgment itself shows this, and there is no possibility of a mistake as to the action of the court, and no necessity for reducing the particular words used by the court to writing.　In this case the presiding judge prepared the verdict, and recited therein' that it was returned by the direction of the court.　Nothing more could be asked.

The reasons which influenced the judge to direct a verdict are not stated in the record, but from the argument of counsel we infer that the presiding judge was of the opinion either that the notice given by the lessees to the lessors that there had been an overflow was not sufficient, or that it was not given at the time required by the contract.　Now, the provision of the contract in reference to notice is that "in the event of a partial overflow of said lands second parties shall notify first parties on the first day of June of such year if they claim damage to the crop thereby."　When we remember that this was a contract between the owners of the plantations and their lessees, it is evident that there was nothing formal about the notice required.　It is not even required that the notice should be in writing.　The intention was that the lessors should have notice of this overflow and of the claim for a reduction of the rent by the first of June.　The evidence shows, we think, that they were given notice of that by a letter mailed by lessees on the 7th of April, which plaintiffs must have received a few days afterwards, for the letter was answered.

It is contended with much force that this notice was of no effect because not given on the first of June, as provided in the contract.　But we think that such construction of the contract would be entirely too strict.　If the notice was given prior to the first day of June, the parties had notice on that day, which was a　substantial compliance with the terms of the con-

tract. So soon as the overflow came, and it was certain that damage was caused thereby, we think the lessees had the right to give the notice required by the contract. If, after the overflow and notice thereof, the parties could not, or did not, agree on the amount of the reduction in rent, the contract fixes it by providing that the rent shall then be one-fourth of the cotton and one-third of the corn, hay, and other products of the land for that year.

The contract also provided that in the event of an overflow the lessor should have the use of the gin house and machinery for that year. But neither the fact that the lessees continued to use the gin, nor the fact that they did not cut and gather the Bermuda grass on the place, forfeited their right to the reduction in the rent provided for in case of overflow. If the lessees used the gin, they are liable to the lessors for the rental value thereof for that season; and if they failed to gather any crop they were required by their contract to gather, then they are, by such contract, responsible to the plaintiffs for one-third the value thereof. Whether Bermuda grass was a crop covered by the contract is a question of fact about which we express no opinion.

There was evidence tending to show that there had been a partial overflow and damage to crop of defendants, that plaintiffs had notice thereof, and that defendants were not liable for the $2000 as rents for that year, but for a part of the crops produced and for the use of the gin house and machinery. We are therefore of the opinion that the presiding judge erred in withdrawing the case from the jury.

Judgment reversed, and cause remanded for a new trial.